**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **ZAHID KHATTAK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **V.** ) | **Civil No. ____** |
| ) | |
| **GRANT TURNER,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| Chief Executive Officer, ) | |
| In His Official Capacity ) | |
| United States Agency ) | |
| For Global Media, ) | |
| 330 Independence Ave., SW ) | |
| Washington, DC 20237, ) | |
| ) | |
| Defendant. ) | |

_____ )

## COMPLAINT

**(Title VII- National Origin Discrimination)**

### I.     INTRODUCTION/ PRELIMINARY STATEMENT

Plaintiff Zahid Khattak ("Khattak") hereby files this Complaint, alleging

national origin discrimination in selection.

### II.     PARTIES

1.     Zahid Khattak ("Khattak") is a former contractor for the USAGM's Pashto

Service, and a Washington, D.C.  applicant for the federal position of  for the United States

Agency for Global Media (USAGM), "Defendant" herein. Ex. 1

2.     Defendant U.S. Agency for Global Media is a federal agency and is

headquartered in Washington, D.C.

## III.   JURISDICTION AND VENUE

3.     The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 2000 et. seq

and 28 U.S.C. 1331, 1343(a).

4.     Venue is proper in the District of Columbia, because this case arises out of

discrimination and reprisal committed by Defendant with respect to Plaintiff's

applications for employment within this District.

## IV.   FACTS PERTAINING TO THE UNLAWFUL NON-SELECTION OF MR. KHATTAK UNDER VACANCY NO. DE-10137129, TO THE USAGM EEO OFFICE

5.     Zahid Khattak is a U.S. citizen who emigrated from Pakistan. Ex. 1 ¶ 2.

6.     Khattak is a native speaker of the Pashto language, which is commonly spoken

in both Pakistan and Afghanistan. Ex. 1 ¶ 3.

7.     There are three main dialect varieties of Pashto: northern, central and

southern. Ex. 1 ¶ 4.

8.     These dialects are sufficiently distinct, such that the USAGM provides separate

Afghanistan services. Ex. 1 ¶ 5.

9.     USAGM's Deewa Service is a Pashto language news service, directed to the

Pashto speakers of the border region of Northwest Pakistan, not to Afghanistan (which has

its own service). Ex. 1 ¶ 6.

10.     Khattak has worked for the Pashto service as a contracted on-air broadcaster.

Ex. 1 ¶ 7.

11.   In January 2017, two FTE positions were announced for the Deewa Service, under the South and Central Asian division. Ex. 1 ¶ 8.

12.   All contractors already working at the Deewa Service applied through the prescribed process and two—including Khattak-- were informed in writing of their selection. Ex. 1 ¶ 9.

13.   Upon information and belief, Mr. Nafees Takar selected Khattak. Ex. 1 ¶ 10.

14.   Around that time, however, President Trump announced a freeze on all federal hirings, and the two selections were rescinded. Ex. 1 ¶ 11.

15.   After the freeze was lifted, in February 2018, the BBG re-announced, but this time for only one FTE. Ex. 1 ¶ 12.

16.   A process ensued and interviews were conducted by a panel selected by management. Ex. 1 ¶ 13.

17.   Khattak applied, but all qualified applicants were issued emails by HR stating, "not selected". Ex. 1 ¶ 14.

18.   Subsequently, in March 2018, the same position was announced again as Vacancy No. DE-10137129-18-LM. Ex. 1 ¶ 5.

19.   This time, however, no interviews were conducted. Ex. 1 ¶ 16.

20.   On April 2, 2018, the preliminary selection of Mr. Fawad Ahmad Lamah was sent to Human Resources, but candidates were not informed of anything. See Exs. 1 ¶17, 2.

21.   On April 12, 2018, all candidates were informed that they were not selected. See Ex. 3 (Declaration of Wakil Khan). Ex. 1 ¶ 18.

22.    As Khattak is familiar with the qualified professionals in the field, it appeared to him and others that, again, all qualified applicants who had applied had been issued emails by HR simply informing that they were "not selected". Ex. 1 ¶19.

23.    On Monday, April 16, 2018, Khattak sought out Mr. Takar and asked him about the results of the selection process. Ex. 1 ¶20.

24.    Mr. Takar, the Deewa Service Chief, falsely told Khattak that he did not know whether any selection had been made. Ex. 1 ¶21.

25.    On May 10, 2018, at least 48 days after the decision had been reached, candidates were informed of the selection of Ahmad Fawad Lami. Ex. 1 ¶22; Ex. 2.

26.    Later, during a meeting sought by the rejected applicants, the South and Central Asia Division Head Mr. Ayazi stated that Takar, was disqualified when the post was re-advertised. Ex. 1 ¶23.

27.    Upon information and belief, It was Ayazi  who disqualified Takar and acted in Takar's stead to finalize the improper selection.

28.    The selection memo highlights selectee Lami's experience in the Agency's Afghanistan Service, and makes no mention of a background suitable for broadcasting to the Pakistani border region. Ex. 1 ¶ 24.

29.    Unlike Khattak, Ayazi is of Afghan, not Pakistani origin. Ex. 1 ¶ 25.

30.    Selectee Lami, who, like Ayazi is of Afghan national origin, had no experience broadcasting in, and is not even conversant in the relevant dialect. Ex. 1 ¶ 25.

31.    Contrary to the selection memo, the choice Mr. Lami of over Khattak under Vacancy No. DE-10137129 to the USAGM Deewa Service was based on national, ethnic affinity, rather than merit. Ex. 1 ¶ 26.

32.    USAGM's explanation for its conduct, essentially that Lami was the best qualified candidate and better-qualified than Khattak, is a pretext to cover over national origin discrimination.

V.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

33.    According to documents generated by the Defendant, on or about April 2, 2018, South and Central Asia Division director Akbar Ayazi sent the selection recommendation of his fellow Afghan, Fawad Ahmad Lamah, to Human Resources.

34.    On the prior occasion, when no selection had been made from the cert, non-selected candidates were provided a notice just stating that they had not been selected, which did not inform as to why.

35.    When Khattak was again informed of his nonselection on April 12, 2018, the notice provided the same information as Khattak had received previously upon nonselection: it simply stated that he was not selected, without any hint of what otherwise happened. Ex. 1 ¶ 29.

36.    Khattak soon learned that several of Khattak's colleagues had also applied and not been selected, and had received the same notice as had he. Ex. 1 ¶ 30.

37.    Upon information and belief, Khattak's supervisor, Mr. Takar, knew of selectee Lamah's selection around April 2, 2018, when it was made.  Ex. 1 ¶ 31.

38.   Nonetheless, when, on Monday, April 16, 2018, Khattak asked Takar whether any selection had been made, thinking that perhaps, once again, no selection was being made, Takar falsely told Khattak that he did not know if any selection had been made at all, or who might have been selected. Ex. 1 ¶ 32.

39.   Had no selection been made, an EEO complaint would most likely have been futile for Khattak.

40.   Believing that he was familiar with the eligible dialect-speaking candidates and having been misled by Takar, Khattak inferred that no selection had been made and was deterred from initiating any EEO complaint. Ex. 1 ¶ 33.

41.   It was only on May 10, 2018, that Khattak was first able to ascertain that he was discriminated against, as that was when both he and declarant Wakil Khan were informed of both the fact of *any selection at all*, and the *identity* of the selectee. Ex. 1 ¶ 34.

42.   On June 19, 2018, Khattak then protested nonselection under Vacancy No. DE-10137129, to the USAGM EEO office.  Ex. 1 ¶ 35.

43.   Khattak walked in and told the staff that he needed to file a complaint. Ex. 1 ¶ 36.

44.   Then, a woman took him to a conference room and handed him an initial intake form. Ex. 1 ¶ 37.

45.   She asked Khattak when he was informed that someone was hired under Vacancy No. DE-10137129 and he told her that it was on May 10, 2018. Ex. 1 ¶ 38.

46.   The woman then counted the days and told him he still had a few days to initiate his complaint. Ex. 1 ¶ 39

47.    Khattak completed the complaint form, signed it and handed it to the woman on the spot, still on June 19, 2018. Ex. 1 ¶ 40; Ex. 4.

48.    On July 12, 2018, Khattak signed a form agreeing to extend the EEO counseling period. Ex. 1 ¶ 41. Ex. 4

49.    On July 16, 2018, "EEO counselor" Michele Curry asked for additional documentation (which Mr. Khattak subsequently provided). Ex. 1 ¶ 42; Ex. 5

50.    On September 19, 2018, Mr. Khattak met with Curry. Ex. 1 ¶ 43.

51.    It is undisputed that Khattak subsequently filed a formal complaint with the Department's EEO office, within the time limit prescribed by the notice, on October 2, 2018. Ex. 1 ¶ 44.

52.    However, on August 5, 2019, the Agency meritlessly dismissed the formal Complaint as untimely, asserting that Khattak's 45 days for initiating a complaint began on April 12, 2018, which is the date upon which he was merely informed that he was not selected under Vacancy No. DE-10137129, to the USAGM EEO office. Ex. 1 ¶ 45; Ex. 6.

53.    The Agency's dismissal notice admits directly that a complainant need not initiate his complaint until within 45 days after he has "reasonable suspicion of discrimination."  Ex. 1 ¶ 46; Ex. 6.

54.    The mere fact of nonselection did not trigger such suspicion, particularly when Agency decision-makers had cultivated the impression that no selection had been made while failing to disclose a discriminatory selection.  Ex. 1 ¶ 47.

55.    If the fact of nonselection necessarily triggered the 45-day period in all circumstances, every rejected federal job-seeker would be influenced to file a complaint on every experienced nonselection, even before ascertaining the selectee's identity.

56.    Such a trigger would also wrongfully incentivize agencies to deviously decline to inform rejected candidates of who was selected in their stead, so as to induce them to allow the 45-day limitations period to expire without filing a complaint over even the most blatantly discriminatory action.

57.    Until May 10, 2019, Khattak had no reason to suspect that the position advertised as Vacancy No. DE-10137129, to the USAGM EEO office was filled—from out of left field—with a non-dialect speaker who shared the South and Central Asia Division Director's national origin. Ex. 1 ¶ 48.

58.    Khattak initiated EEO counseling more than 45 days after he was informed that he was not selected, but within 45 days after he was informed that a candidate was selected (May 10-June 19 amounts to 40 days). Ex. 1 ¶ 49; Ex. 4.

59.    Even if the weekend days occurring just after April 12 are not included in the count (since Takar did not mislead Khattak until April 16), only four days would be added back on to the 40-day total, such that Khattak's complaint was still compliant with the 45-day rule. Ex. 1 ¶ 50.

60.    Moreover, Khattak was diligent, in that he asked Takar what happened on the selection, on Monday April 16, after having been informed on Thursday, April 12. Ex. 1 ¶ 51.

61.   "Congress never [] wanted the exhaustion doctrine to become a massive procedural roadblock to access to the courts." *Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch*, 572 F.3d 1039, 1045 (9th Cir.  2009) citing *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).

62.   Equitable tolling -- as a method for adjusting the rights of two "innocent parties" -- merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit. *Chung v. United States DOJ*, 333 F.3d 273, 278-279 (D.C. Cir. 2003).

63.   Equitable tolling doctrine applies if "the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Nygren v. Ashcroft*, 109 Fed. Appx. 816 at 820 (8th Cir. 2004) (citations and internal quotation marks omitted). See Also *Price v. Litton Business Sys. Inc.*, 694 F.2d 963, 965 (4th Cir. 1982), cert. denied, 469 U.S. 1036 (1984).

64.   "[E]quitable principles favor tolling where, for example, a defendant engaged in affirmative misconduct, or misled a plaintiff about the running of a limitations period." *Washington v. Wash. Metro. Area Transit Auth*, 160 F.3d 750, 752-53 (D.C. Cir. 1998) (quotations and bracket omitted); see also *White v. Geithner*, 602 F. Supp. 2d 35, 38 (D.D.C. 2009) (stating that a court exercises its equitable power to toll Title VII's limitation periods where a plaintiff comes "forward with specific proof of an employer's affirmative acts or misleading statements" that prevented the plaintiff from filing an EEO complaint within

the limitation period). *Hairston v. Tapella*, 664 F. Supp. 2d 106, 111-112 (D.D.C. 2009).

Accord: *Coles v. Penny*, 531 F.2d 609, 614-615 (D.C. Cir. 1976).

65.    Equitable tolling may also be appropriate where a plaintiff has been lulled

into inaction by her past employer, state or federal agencies, or the courts. *Noisette v.*

*Geithner*, 693 F. Supp. 2d 60, 69 (D.D.C. 2010), citing *Gray v. Philips Petroleum Co.*, 858 F.2d

610, 616 (10th Cir. 1988), citing *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (Title

VII's 30-day limitations period for filing suit tolled because notice misled plaintiff into late

filing).

66.    *Washington v. Wash. Metro. Area Transit Auth*, 160 F.3d 750, 752-53 (D.C. Cir.

1998) holds that: "equitable principles favor tolling where, for example, a defendant

engaged in affirmative misconduct, or misled a plaintiff about the running of a limitations

period."

67.    "Equitable tolling . . . which ask[s] whether equity requires extending a

limitations period, [is] for the judge to apply, using her discretion, regardless of the

presence of a factual dispute." *Hewitt v. Rice*, 560 F. Supp. 2d 61, 64-65 (D.D.C.

2008)(Roberts, J.), citing *Smith-Haynie v. District of Columbia* 332 U.S. App. D.C. 182, 155

F.3d 575, 579 (D.C. Cir. 1998).

68.    Under present circumstances, where the Defendant impeded Khattak's

attempt to ascertain that he had been discriminated against, equitable tolling must apply.

*Connor v. Hodel*, 1984 U.S. Dist. Lexis, 16632 *8 (D.D.C. 1984).

69.    Accordingly, applying appropriate principles of equitable tolling, Mr. Khattak filed his formal complaint on June 19, 2018[1], less than 45 days after he first learned the identity of the selectee, and in timely fashion even assuming the loss of four days between April 12 and April 16, 2018. Additionally, 180 days have passed since Mr. Khattak filed his formal complaint on October 2, 2018, and less than 90 days have passed since dismissal of his EEO complaint on August 5, 2019, Mr. Khattak is free to file his lawsuit on the issues raised in his October 2, 2018, formal complaint. 29 CFR§ 1614.407(a), (d).

70.    Therefore, as to all matters alleged herein, Khattak is free to exercise his private right of action in the U.S. District Court and to obtain a trial de novo pursuant to 42 U.S.C. 2000e-16(c).

## VI.    STATEMENT OF CLAIM

### COUNT I: DISCRIMINATORY FAILURE TO SELECT MR. KHATTAK, ON ACCOUNT OF HIS NATIONAL ORIGIN

71.    Mr. Khattak incorporates all above paragraphs by reference.

72.    As discussed above, Khattak was seeking selection under Vacancy No. DE-10137129, to the USAGM International Multimedia Broadcaster (Pashto) position in the Deewa service.

---

[1] The Agency's EEO office maintains that the matter was raised three days later, on June 22, 2018. The difference is immaterial, as either date landed within 45 days after May 10, 2018, when Mr. Khattak was first able to ascertain—by the identity of the selectee—that his non-selection had been discriminatory.

73.    In fact, his selection to perform those duties  had previously been recommended by Mr. Takar, pursuant to the prior vacancy announcement described above.

74.    Title VII forbids discrimination on account of national origin.

75.    By denying Khattak the position and instead offering it to another, on account of their respective races and national origins, Defendant unlawfully discriminated against Khattak in violation of Title VII.

## VII. REQUEST FOR RELIEF

**WHEREFORE, the Plaintiff, Zahid Khattak, prays that the Court grant him the following relief:**

(a)    Instatement to a position at the GS-12 level, with full back pay, lost income and benefits.

(b)    Compensatory damages, in an amount to be determined by the jury in accordance with the proof at trial, for the emotional and consequential harm caused by Defendant;

(c)    Prejudgment and post judgment interest;

(d)    Reasonable attorneys' fees, expenses and costs;

(e)    Restoration of all leave used in connection to the case;

(f)    Reimbursement for all expenses incurred related to the case;

(g)    Posting of notices on Defendants' premises notifying employees that Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation; and

(h)      Such other relief as the court shall deem just and proper.

**VII.    JURY TRIAL DEMAND**

The Plaintiff demands that this case be tried by a jury.

Respectfully submitted,


THE GOLDSMITH LAW FIRM, LLC

/s/

_____
Leizer Z. Goldsmith
5335 Wisconsin Avenue NW Suite 440
Washington, D.C. 20015
Telephone: (202) 895-1506
Facsimile: (202) 318-0798
Email: lgoldsmith@goldsmithfirm.com
Counsel for Plaintiff Zahid Khattak